UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TIFFANY ADLER

                            Plaintiff,                **MEMORANDUM AND ORDER**

   -against-                                    **23-CV-1634 (GRB) (ST)**

SONOTEC US INC., SONOTEC GMBH, and
CHRISTOPHER PORTELLI,

                            Defendants.
-----------------------------------------------------------X

**TISCIONE, United States Magistrate Judge:**

On March 3, 2023, Tiffany Adler ("Plaintiff") sued her direct supervisor, Christopher Portelli, and former employer, Sonotec US Inc., and its parent company, Sonotec GMBH (collectively "Defendants"), for retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.* ("Title VII"), New York State Human Rights Law, New York Exec. Law § 296 *et seq.* ("NYHRL"), and New York common law. *See generally* Compl., ECF No. 1. On May 5, 2023, Defendants filed an Answer and a counterclaim of intentional infliction of emotional distress, *see generally*, Answer, ECF No. 12, which this Court dismissed. *See generally* Min. Entry dated, August 3, 2023, ECF No. 24.

Now before this Court is Plaintiff's Motion for Sanctions Pursuant to Rule 37(e) based on Defendants' alleged failure to preserve electronically stored information (the "Motion"), filed on September 27, 2024. For the reasons discussed below, the Motion is GRANTED IN PART.

## BACKGROUND

The Court presumes the Parties' familiarity with this case. What follows are the facts and procedural history that are relevant to Plaintiff's motion for sanctions.

On December 27, 2022, Plaintiff and Christopher Portelli ("Mr. Portelli") had an in-office discussion about their professional and personal relationship.[1] The conversation was initiated after Sonotec's December 22, 2022, holiday party ("Holiday Party"), where Mr. Portelli repeatedly touched Plaintiff's thigh. *See id.* at 45-47*;* Pl's. Ex. H at 41-42. Plaintiff repeatedly expressed discomfort with the then-nature of her relationship with Mr. Portelli, and indicated that she "just [wanted to] be…friend[s]". Def's. Ex. 2 at 3, 40, 55. Mr. Portelli spent much of the conversation apologizing for his behavior at the Holiday Party, and pleaded for forgiveness. *Id.* at 15-27, 47-50, 54-60, 67-69, 72-75, 82-90.

During the conversation, Plaintiff told Mr. Portelli that her boyfriend, Derek, encouraged Plaintiff to tell Sonotec headquarters about the Holiday Party incident. *See id.* at 21. In response, Mr. Portelli stated that Plaintiff "can destroy [him]," "destroy my whole career," and noted that "[Plaintiff] can always destroy me." *Id.* at 23, 47, 54. Moreover, Mr. Portelli lamented that he does not "wanna lose everything," but that he would do "whatever [Plaintiff] ask[s] . . . You wanna take my family away, you wanna take the business away, whatever." "You want me to resign here?" *Id.* at 68, 82.

Three days later, on December 30, 2022, Mr. Portelli filed an employee-incident report with Sonotec's human resource officer, Cristy Baldwin. Pl's. Mem. Supp. of Mot. at 8; Pl's. Ex. P. The incident report describes the Holiday Party incident, as well as the December 27, 2022, conversation between Plaintiff and Mr. Portelli. Specifically, the report notes that Plaintiff's boyfriend "wants to take [legal] action". *Id.* at Def. 011261. Later, at his deposition in this case, Mr. Portelli stated he filed the incident report because he "started feeling really uncomfortable ...

---

[1] In support of their arguments, Plaintiff and Defendant submitted a 93-page transcript of this conversation. This Court will not endeavor recounting the entirety of this 90-minute conversation between the parties, as much of the conversation is irrelevant to the present Motion. *See* Def's. Ex. 2, ECF No. 65. Nevertheless, the Court briefly summarizes the facts of the December 27, 2022 conversation.

around December 30 with [Plaintiff's] very cold behavior and her very weird acting, like recording me without telling me". Pl's. Ex. W at 164:5-9. Mr. Portelli further stated he filed the incident report "because I don't think what I'm being claimed is true." *Id.* at 166:21-22.

On January 4, 2022, Cristy Baldwin investigated the matter by interviewing key "eye witnesses" to the Holiday Party incident. Pl's. Ex. P. at Def. 011260. The investigation revealed that no individual saw "anything related to the [Holiday Party] incited [sic]," but it was noted that the "atmosphere was a little awkward." *Id.* As a result, the matter was seemingly dismissed, and Plaintiff and Mr. Portelli were no longer to work with one another. *See id.*

On January 5, 2022, Plaintiff was terminated.[2] *See* Pl's. Mem. Supp. at 9. The following day, Mr. Portelli searched Plaintiff's work computer. *Id.* Mr. Portelli checked Plaintiff's internet browsing history where he claims to have found, *inter alia*, search terms that he believed "could lead to a lawsuit". Pl's. Ex. W at 212:8-215:9. Mr. Portelli testified that he found the following search terms particularly problematic: "definition sexual harassment," "grounds for harassment lawsuit," "sexual harassment lawyers," and information on certain statutes of limitations. Pl's. Ex. Q at Defs. 6859, 6850-54, 6827. After making this discovery, Mr. Portelli engaged Counsel on January 8, 2022.

On January 8, 2022, Sonotec's counsel issued a litigation hold on all evidence relating to Plaintiff and Mr. Portelli. Pl's. Ex. X at 332:4-25; Pl's. Ex. W at 225:9-25.

## LEGAL STANDARD

Rule 37(e) governs sanctions for the failure to preserve electronically stored information ("ESI"). Fed. R. Civ. P. 37(e). Under Rule 37(e), a court may impose sanctions "[i]f [ESI] that should have been preserved in anticipation or conduct of litigation is lost because a party failed to

---

[2] The Court notes the parties dispute the basis of Plaintiff's termination. *See id.* at 10; Pl's. Ex. W at 203:11-204:18. But, the basis of termination is irrelevant to the present Motion, thus, the Court does not address this specific issue.

take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e).  The extent of the sanctions permitted depend on whether the court finds "prejudice to another party from loss of the information," or, alternatively, "that the [spoliating] party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(1)-(2).  Rule 37(e) therefore requires a three-step inquiry:

> The first is to decide if the rule applies at all – that is, if a party failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been "prejudice to another party from loss of the information," in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).  Lastly, the third step to consider – regardless of prejudice to another party – is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation", in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Oscasio v. City of Canandaigua*, No. 18-CV-6712 (MAV) (CDH), 2025 WL 1064721, at *4 (W.D.N.Y. Apr. 9, 2025) (quoting *Karsch v. Blink Health Ltd.,* No. 17-CV-3880 (VM) (BCM), 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019) (quoting *Coan v. Dunne*, 602 B.R. 429, 438 (D. Conn. 2019))).

When resolving a motion for sanctions, a district court may act as a factfinder. *Hoffer v. Tellone*, 128 F.4th 433, 441 (2d Cir. 2025).  Specifically, when deciding a Rule 37(e) motion for sanctions, district courts may make findings of fact and credibility determinations with respect to the Rule 37(e) factors. *Id.* (quoting *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 139-40 (2d Cir. 2023)); *see also Liebowitz v. Bandshell Artist Mgmt.,* 6 F.4th 267, 282 (2d Cir. 2021) (noting a district court's credibility determinations made at sanction hearings are granted strong deference); *West v. Goodyear Tire & Rubber Co.*, 167 F..3d 776, 779 (2d. Cir. 1999) (rejecting a district court's factual findings in support of its imposition of sanctions only if they are clearly

erroneous); *Friends of Animals Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334 (2d. Cir. 1997) (noting district courts have broad authority to impose sanctions, and a court's factual findings supporting its decision are reviewed for clear error).

**DISCUSSION**

As a threshold matter, a party seeking spoliation sanctions must show that the evidence at issue actually existed. *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 175-76 (S.D.N.Y. 2022) (quoting *La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 82 (S.D.N.Y. 2022). Spoliation sanctions may only be imposed when the party seeking such sanctions demonstrates that the relevant evidence has been lost. *Id.*

Plaintiff seeks discovery sanctions regarding every text message Mr. Portelli and Alyssa Mustafic ("Ms. Mustafic") ever sent regarding Plaintiff. Pl's. Reply. at 1 [cite Pl's Mem. Supp]. However, much of the Parties' briefs focus on text messages sent between Mr. Portelli, Ms. Mustafic, Angella Stallone ("Ms. Stallone"), and the Plaintiff herself. *See generally*, Pl's. Mem. Supp.; Def's. Mem. Opp.; Pl's. Reply. Plaintiff has not provided the Court with any argument, or evidence, to suggest that they actually seek discovery sanctions for all texts ever sent or received by Mr. Portelli and Ms. Mustafic.[3] Thus, this Court will proceed with the understanding that Plaintiff's request pertains to the text messages from, and between, Mr. Portelli, Ms. Mustafic, and Ms. Stallone.

---

[3] If Plaintiff does in fact seek discovery sanctions regarding *all* texts ever sent or received by Mr. Portelli and Ms. Mustafic, Plaintiff must adequately brief the issue to this Court. Plaintiff must provide the Court with evidence showing there are text exchanges, relating to Plaintiff, that include a broader scope of individuals than the employees of Sonotec U.S.

## I.     Text Messages between Mr. Portelli and Ms. Mustafic

Neither Plaintiff, nor Defendant, contest the existence, and loss, of text messages between Mr. Portelli and Ms. Mustafic. *See generally,* Pl's. Mem. Supp.; Def's. Mem. Opp. This Court agrees.

Photographs of a text message exchange between Mr. Portelli and Alyssa Mustafic provides direct evidence that these texts actually exist. Pl's. Ex. HH. Moreover, Mr. Portelli testified that he "probably deleted" his text exchange with Ms. Mustafic before Sonotec's counsel instituted a litigation hold. Pl's. Ex. W. at 243:9-14. Likewise, Ms. Mustafic testified that she "deleted [the conversation] because [she] didn't want anything to do with [Plaintiff]". Pl's. Ex. V. at 14:15. And, Ms. Mustafic testified her cell-phone is set to automatically delete all text messages after 30-days. *Id.* at 14:19-25, 15:2-21. Thus, Plaintiff has shown that certain text messages between Mr. Portelli and Ms. Mustafic actually exist and have been lost.

## II.    Text Messages between Ms. Stallone and Ms. Mustafic.

Plaintiff and Defendant dispute whether specific text messages between Ms. Mustafic and Ms. Stallone actually exist and were lost. Plaintiff contends that two specific text chains actually exist and were lost, Pl's. Ex. O at Def. 005747, 005752, given that the messages which reactions were added too, were not produced in discovery. *See* Pl's. Mem. Reply at 2 ("[Defendants] cannot explain why "reactions" are present but original texts are missing"). Defendants contend that Ms. Mustafic and Ms. Stallone were not reacting to a specific message, but instead may have been reacting, via text, to a telephone conversation they were having. Put simply, Defendants appear to argue the text chains may not exist at all:

> [Plaintiff] totally ignored that Stallone testified that she and Alyssa Mustafic text each other while speaking to each other on the phone while texting and that was why an emoji of "Haha" would be by itself. When Stallone was asked, if anyone ever sent her texts about work on her team from the text message we just looked at,

- 6 -

> she testified "I don't recall if I text about it. There's time that we talk on the phone simultaneously."

Def's. Mem. Opp. at 13-14. Likewise, Ms. Mustafic testified a similar story –

> In regard to [P]laintiff's counsel theory of text messages missing in a chain between Mustafic and Stallone, when asked specifically about those messages, Mustafic corroborated Stallone's deposition testimony that that [sic] while the two of them were texting messages that she and Stallone "multiple times" would be speaking on the phone while texting to each other. And that was why it was possible why things like "laughed at" were there because she would have been talking on the phone and could said it and texted back and laughed at it, because she and Stallone had a history of doing that.

*Id.* at 18.

Based on this Court's understanding of "reactions" to text messages, pursuant to guidance from Apple Inc., as well as the Court's own common knowledge, this Court finds Defendants' proffered explanation, as written, not only incomprehensible, but implausible. *See Hoffer*, 128 F.4th at 441-42 (upholding the District Court's decision to discount testimony and make credibility determinations with respect to the evidence at issue).

Text messages produced during discovery reveal Ms. Stallone and Ms. Mustafic "reacted" to multiple text messages they exchanged. Pl's. Ex. O at Def. 005747, 005750, 005752. A "reaction," formally a "tapback" (hereinafter "reaction") is a way for iPhone users to respond to a text message with an exclamation, laughter, a heart, or even an emoji. Apple Inc., *React with Tapbacks in Messages on iPhone*, iPhone User Guide, https://support.apple.com/guide/iphone/react-with-tapbacks-iph018d3c336/ios (last visited September 10, 2025). A user reacts to a <u>specific</u> text message in a conversation and only <u>one reaction</u> can be added to a message. *Id.* Everyone who is a part of the conversation can see the specific message and its accompanying reaction, even if someone is not an iPhone user. *Id.*

Since users can see the specific message that a reaction was attached to, we know that certain texts exist even if the original message was not produced in discovery. *See id.*; Pl's. Ex. O at Def. 005747, 005752. On January 4, 2023, Ms. Mustafic reacted with laughter to the following text message: "YOU'RE A WHOREEEEEE [sic] TRIED TO SLEEP WITH THE BOSS FOU…". Pl's. Ex. O at Def. 005747. Likewise, Ms. Stallone reacted with 'emphasized' to the following text message: "She's too much man". Pl's. Ex. O. at Def. 005750. On January 5, 2023, Ms. Stallone reacted with laughter to the following text message: "one moment they were swimming with the beluga whales the next moment they're suing each other". Pl's. Ex. O at Def. 005752.

These reactions provide the Court direct evidence that specific text chains between Ms. Mustafic and Ms. Stallone actually exist. Since the original text messages were not produced in discovery, this Court holds the text messages have been lost.

### III.   Obligation to Preserve

The Court must first determine whether the alleged spoliating party had an obligation to preserve the evidence at the time it was destroyed. *Oscasio*, 2025 WL 1064721, at *4 (citing *Karsch*, 2019 WL 2708125, at *13)). Such an obligation arises "when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Id.* (citing *Fujitsu Ltd v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001); *see also Ellis v. PB Ventilating Sys., INC.,* No. 23-CV-4629, 2024 WL 3025975, at *6 (S.D.N.Y. June 17, 2024) ("[T]he Court should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant.").

Typically, the obligation to preserve arises no later than the date the action is commenced, but the obligation may arise earlier. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *9 (S.D.N.Y. Mar. 12, 2018). Courts have found

that the obligation may arise when litigation is reasonably foreseeable. *EBIN New York, Inc. v. SIC Enterprise, Inc.*, No. 19-CV-1017 (PKC) (TAM), 2022 WL 4451001, at *6 (E.D.N.Y. Sept. 23, 2022) (collecting cases where Courts in this Circuit have found the obligation to preserve evidence arose months prior to the commencement of litigation, when circumstantial or direct evidence made future litigation reasonably foreseeable).

Here, the duty to preserve evidence arose, at the latest, on March 3, 2023, when Plaintiff formally commenced this action. *See generally* Compl.; *see Charles Oakley, Plaintiff, v. MSG Networks, Inc., ET AL., Defendants.*, No. 17-CV-6903 (RJS), 2025 WL 2061665 at *4 (S.D.N.Y. July 23, 2025) (holding the duty to preserve arose no later than the date the action was commenced); *In Re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* 341 F.R.D. 474, 502 (S.D.N.Y. 2022) (holding the duty to preserve arose the day plaintiff filed the complaint); *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("[T]he duty to preserve evidence arose, at the latest, on August 16, 2001, when Zubulake filed her EEOC charge.").

However, Plaintiff contends the duty to preserve evidence arose much earlier than the date of the initial filing, when litigation was reasonably foreseeable. Pl's. Mem. Supp. at x; *see Zubulake*, 220 F.R.D at 216 (noting the duty may arise when litigation becomes reasonably foreseeable). Plaintiff argues litigation was reasonably foreseeable as early as December 27 or December 30, 2022. After reviewing the record, this Court finds the Defendant's duty to preserve evidence arose on January 6, 2022, after Defendant Portelli reviewed Plaintiff's work computer and engaged counsel.

1. December 27, 2022

Plaintiff argues that the December 27, 2022, conversation between Plaintiff and Mr. Portelli put Defendants on notice that litigation was reasonably foreseeable. Pl's. Mem. Supp. at

16. Plaintiff's argument rests on the assertion that because Mr. Portelli filed an incident report three days after the December 27 conversation, which his incident report cites, Mr. Portelli believed litigation was reasonably foreseeable on December 27, 2022. *Id.* at 6. Moreover, Plaintiff argues the nature of the conversation – Mr. Portelli's "harassing conduct" – and his subsequent "[admission]" of such conduct, is what prompted Mr. Portelli to file an incident report. *Id.* Showing, "Mr. Portelli wanted to have something on paper, exonerating himself of any wrongdoing." *Id.*

However, the parties' conversation does not indicate that a lawsuit was in fact expected, let alone likely. Over the course of the 90-minute conversation, Plaintiff did not state that she was a victim of sexual harassment, or that she was seeking counsel. *See generally*, Defs.' Ex. 2. In fact, Plaintiff expressly stated that she would not "ruin" Mr. Portelli's life, even though she knew she could. *Id.* at Defs. 10942:5-7. Standing alone, the December 27 conversation does not present a basis for liability, thus failing to put Defendants on notice of future litigation. *See Herbert v. Lynch,* No. 7:22-CV-6303 (NSR) (VR), 2024 WL 20942, at *5 (S.D.N.Y. Jan. 2, 2024) (holding the duty to preserve did not arise when Plaintiff submitted formal grievances that failed to allege assault even though prison facilities' experience with prior litigation may render it reasonable to anticipate litigation); *Cruz v. G-Star Inc.*, No. 17-CV-7685 (PGG), 2019 WL 4805765 at *9 (S.D.N.Y. Sept. 30, 2019) ("[T]he possible future termination of a disgruntled employee does not present a likelihood of litigation where (1) the employee's complaints do not present a basis for a recognized cause of action; and (2) the employee has not threatened to bring a lawsuit or suggested that she will do so.").

2. December 30, 2022

Plaintiff next argues litigation became reasonably foreseeable on December 30, 2022, when Mr. Portelli filed an employee incident report. Pl's. Mem. Supp. at 6. Mr. Portelli, in his incident report, noted that Plaintiff's boyfriend was considering taking legal action. *See* Pl's. Ex. P. But, Mr. Portelli's filing of the incident report, and its contents, do not show litigation was expected, or likely. While it is notable that Mr. Portelli filed an incident report, these circumstances do not present an instance where Plaintiff put Defendants on notice. *See Ahamed v. 563 Manhattan Inc.*, No. 19-CV-6388 (EK) (CLP), 2024 WL 3061942 at *6 (E.D.N.Y. Mar. 29, 2024) (holding the duty to preserve arose when *Plaintiffs* mailed a written "Notice to Preserve" letter to Defendants) (emphasis added); *In re Frontier Communications Corp.*, 666 B.R. 260, 284 (S.D.N.Y. 2025) (collecting cases where cease and desist letters, sent from Plaintiff to Defendants, triggered a duty to preserve).

Generally, internal communications, and efforts to prevent litigation, do not trigger an obligation to preserve evidence. *See La Belle v. Barclays Capital Inc.*, 340 F.R.D. 74, 83 (S.D.N.Y. 2022) (holding remarks made by human resource employees discussing the prevention of litigation did not trigger a duty to preserve evidence); *see also Zubulake*, 220 F.R.D. at 217 ("Merely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve."); *Carmody v. New York University*, No. 21-CV-8186, 2023 WL 5622867 at *4 (S.D.N.Y. Aug. 31, 2023) (rejecting Plaintiff's argument that Defendant's "belief that Plaintiff had contacted or retained counsel" triggered a duty to preserve evidence). Thus, Defendant's efforts to document and investigate potential sexual harassment allegations do not put Defendants on notice that litigation is reasonably foreseeable.

3. January 6, 2023

Ultimately, this Court finds that the obligation to preserve evidence arose on January 6, 2023. Mr. Portelli's search of Plaintiff's work computer following her termination on January 5, 2023, and his subsequent engagement of Counsel, triggered a duty to preserve. Search terms such as "definition sexual harassment," "grounds for harassment lawsuit," "sexual harassment lawyers sexual harassment lawsuit," provided Mr. Portelli with direct evidence that future litigation was reasonably foreseeable. Pl's. Ex. Q at Defs. 6859, 6850-54, 6827. Further, Mr. Portelli took affirmative steps to preserve evidence on January 6, 2023, showing he believed litigation was reasonably foreseeable. *See* Pl's. Mem. Supp. at 7-8; Delson Decl. ¶¶ 22-24; and Ex. AA at Defendants 324 (noting Defendant Portelli's use of iMazing software to export messages from him phone).

Thus, the obligation to preserve evidence was triggered on January 6, 2023.

**IV.    Reasonable Steps to Preserve**

Once the obligation to preserve evidence is triggered, a litigant must do more than refrain from intentionally destroying relevant evidence, but must also take affirmative steps to prevent inadvertent spoliation. *Equinox*, 592 F. Supp. 3d at 177. Plaintiff, as the party seeking sanctions, must show that Defendants did not take reasonable steps to preserve evidence. *Id.* Moreover, "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Zubulake,* 220 F.R.D. at 218.

1. Mr. Portelli's Text Messages

Based on photographs of text messages produced in discovery, it appears that Mr. Portelli exported some of his text messages regarding Plaintiff to a back-up drive, using iMazing software.

*See* Pl's. Mem. Supp. at 7-8; Delson Decl. ¶¶ 22-24; and Ex. AA at Defendants 324.  Mr. Portelli testified he exported his texts so that he could have a "back-up." *Id.*  Plaintiff contends Mr. Portelli exported only some of his texts and deleted others, specifically, the text chains with Ms. Mustafic.  Plaintiff argues Mr. Portelli deleted text messages the same day he exported them.  However, the evidence is not so clear.

iMazing is a software company that allows users to back-up and transfer data from their iPhone to an external computer.  iMazing Team, *Getting started with iMazing, iMazing Manual* (last updated June 14, 2024), https://imazing.com/guides/getting-started-with-imazing.  Unlike classic data back-ups and transfers, iMazing allows its users to recover deleted text messages. iMazing Team*, Export iPhone Messages (SMS, RCS, iMessage) to your computer in PDF, Excel, CSV, and RSMF, iMazing Guides* (last updated Jul. 3, 2025), https://imazing.com/guides/how-to-export-iphone-text-messages-sms-and-imessages-to-your-computer-as-pdf-excel-csv-or-rsmf. However, deleted text messages may only be recovered if the user had initiated a back-up prior to the iMazing back-up.  *Id.*  In other words, if a user has saved their data before using iMazing, iMazing will also transfer the previously saved data, and the current data.  *Id.*  The result is iMazing allows users to recover text messages that were deleted between the first data saving and the second.  *Id.*  Thus, when transferring text message data with iMazing, all text messages, are transferred.  *Id.*

When a user exports their text message data, to a PDF or Excel format, the user can select which text messages it would like to export.  *Id.*  iMazing allows users to have great control over their data, allowing them to filter by date, time, and conservation.  *Id.*  Thus, users of iMazing can transfer all text messages ever sent or received, and then pick and choose which text messages to export into a readable data format, like PDF or Excel.  *Id.*

Based on this information, it is unclear from the record whether Mr. Portelli deleted text messages on January 6, the same day he exported text messages with iMazing. [cite]. Mr. Portelli may haven affirmatively chosen to not include certain text messages in his "export" of data. *See id.* However, if Mr. Portelli deleted messages on, or prior to, January 6, without backing up his iPhone before using iMazing, those deleted messages would not be recoverable. Neither Plaintiff nor Defendants have offered the Court any argument regarding Mr. Portelli's use of iMazing, how he used it, what filter terms he may have used, whether he chose to back-up the entirety of his text message history, or whether he had previously backed-up his iPhone.

Out of an abundance of caution, this Court finds that Mr. Portelli most likely did not delete text messages the same day he backed-up and exported his texts. *Hoffer*, 128 F.4th 433 (noting that the moving party's burden is to prove each element by a preponderance of the evidence). Rather, without more information, it merely appears that Mr. Portelli's affirmative act of backing-up and exporting texts was a reasonable effort to preserve evidence. *See Skyline Steel, LLC v. PilePro, LLC,* 101 F. Supp. 3d 395, 408 (S.D.N.Y. 2015) (holding litigants must take affirmative steps to preserve evidence and reduce inadvertent spoliation).

2.     Ms. Mustafic & Ms. Stallone's Text Messages.

On the other hand, Ms. Mustafic and Ms. Stallone's testimony regarding their missing text chains is highly incredible. *See Hoffer,* 128 F.4th 433. Ms. Mustafic and Ms. Stallone offer an explanation that defies common knowledge and the capabilities of telephonic and text message conversations.[4] Further, both Ms. Mustafic and Ms. Stallone testified that they affirmatively and

---

[4] The notion that certain text messages were not deleted, and in fact may have never existed, because Ms. Mustafic and Ms. Stallone reacted, via text, to something that was said verbally on the telephone defies reality. This Court will not credit this explanation.

- 14 -

passively deleted text messages after January 6, 2023. Def's. Ex. 16 at 11-17; Pl's. Ex. X at 336:9-337:2.

Ms. Mustafic and Ms. Stallone both had their phones set to automatically delete text messages after 30 days. *See* Ex. V, Mustafic Depo. 14:12 - 15:11 & 299:16 - 300:24; *see also* Ex. X, Stallone Depo. at 336:9 – 337:2; Ex. O at Defendants 5752; *Zubulake,* 220 F.R.D. at 218 (noting once litigation become reasonably foreseeable, parties must suspend all routine document destruction). Both parties had this feature on their cellphone after January 6, 2023. *See* Ex. V, Mustafic Depo. 14:12 - 15:11 & 299:16 - 300:24; *see also* Ex. X, Stallone Depo. at 336:9 – 337:2; Ex. O at Defendants 5752. Moreover, Ms. Mustafic obtained a new cellphone following January 6, when the obligation to preserve evidence was triggered. Def's. Ex. 16 at 16. During her testimony, Ms. Mustafic stated she did not know if her cellphone backed up to iCloud, or if her new iPhone was properly synced with data from her old iPhone. *Id.* Even more damning, Ms. Stallone testified that she began preserving evidence on January 8, 2023, when Sonotec U.S. placed a formal litigation hold on all evidence relating to Plaintiff and Mr. Portelli. Def's. Ex. 16 at 332.

Clearly, both Ms, Mustafic and Ms. Stallone inadvertently spoliated evidence by passively deleting text messages, and failing to take care to ensure proper data transfer when obtaining a new iPhone. *See Skyline Steel, LLC*, 101 F. Supp. 3d at 408. Even further, both parties affirmatively deleted text messages relating to Plaintiff after January 6, 2023.

Thus, based on the incredibility of the witnesses and the passive and affirmative deletion of evidence, the Court finds Ms. Mustafic and Ms. Stallone failed to take reasonable steps to preserve evidence after the obligation to preserve was triggered on January 6, 2023.

### V. The Lost Texts between Ms. Mustafic and Ms. Stallone Cannot be Replaced

Plaintiff sufficiently demonstrates that the messages between Ms. Mustafic and Ms. Stallone deleted after January 6 cannot be replaced. "The movant has the burden to establish that ESI cannot be restored or replaced." *Prelvukaj v. Naselli*, No. 19CV05939RPKPK, 2023 WL 3570659, at *8 (E.D.N.Y. May 18, 2023). Plaintiff contends that after forensic analyses, Defendants were still unable to provide a complete record of texts between Ms. Mustafic and Ms. Stallone. Furthermore, Ms. Mustafic is no longer in possession of the phone in which texts with Ms. Stallone regarding Ms. Adler were deleted. *See* Pl's. Mem. Supp. at 19; *see also* Ex. K at 3; Ex. V at 13:15-14:16. Additionally, Defendants fail to contest Plaintiff's assertions regarding the messages between Ms. Mustafic and Ms. Stallone deleted after January 6. Therefore, the Court finds that these lost texts cannot be restored.

### VI. Ms. Mustafic and Ms. Stallone Demonstrated an Intent to Deprive Plaintiff of the Texts

The Court finds that in failing to take reasonable steps to preserve evidence after the obligation to preserve was triggered on January 6, Ms. Mustafic and Ms. Stallone intended to deprive Plaintiff of the use of these texts during litigation. A "party's conscious dereliction of a known duty to preserve electronic data is both necessary and sufficient to find that the party 'acted with the intent to deprive another party of the information's use' under Rule 37(e)(2)." *Ungar v. City of New York*, 329 F.R.D. 8, 13 (E.D.N.Y. 2018), aff'd, No. 21-1384-CV, 2022 WL 10219749 (2d Cir. Oct. 18, 2022). Furthermore, conscious failure "to take any reasonable steps to preserve" relevant communications satisfies the level of intent required of Rule 37(e)(2). *Id.* (citing *Ottoson v. SMBC Leasing and Finance, Inc.*, 268 F.Supp.3d 570, 582-83 (S.D.N.Y. 2017)).

As discussed in greater detail earlier, Ms. Mustafic and Ms. Stallone failed to take reasonable steps to preserve evidence after the obligation to preserve was triggered on January 6.

It can be argued that the passive deletion of text messages alone by both parties is sufficient enough to constitute an intent to deprive. Even if it were not sufficient, Ms. Mustafic and Ms. Stallone both actively deleted text messages concerning Plaintiff following this duty to trigger date. Therefore, the Court finds that Ms. Mustafic and Ms. Stallone intended to deprive Plaintiff of the use of the deleted texts during litigation. Also, it is noted that since the Court finds an intent to deprive exists, a separate showing regarding the prejudice of this spoiled evidence is unnecessary. *Matthews v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:17-CV-503, 2023 WL 2664418, at *14 (N.D.N.Y. Mar. 28, 2023) (quoting *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 496 (S.D.N.Y. 2022)) ("'If an intent to deprive is found, no separate showing of prejudice is required, because the finding of intent to deprive supports an inference that the opposing party was prejudiced by the loss of information.'").

### VII. Sanctions and Relief

The Court agrees in part with Plaintiff's alternative request for relief and finds an adverse inference jury instruction to be an appropriate sanction. *See* Pl's. Mem. Supp. at 24. Specifically, an instruction that the jury may presume, but is not required to do so, that the deleted messages (the messages between Ms. Mustafic and Ms. Stallone regarding Plaintiff that were deleted after January 6, 2023) are unfavorable to Defendants. *See e.g.*, *Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998) (adverse jury instruction permitted based on the spoilation of evidence).

Furthermore, Under Federal Rule of Civil Procedure 37(a)(5)(A), when a discovery motion is granted pursuant to Rule 37, the Court must "require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." Fed. R. Civ. P. 37(a)(5)(A). Even outside the context of a Rule 37(e) dispute, the Court has the inherent authority to award

attorneys' fees and costs to "punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." *Best Payphones, Inc. v. City of N.Y.*, No. 01-cv-8506, 2016 WL 792396 (E.D.N.Y. 2016) (internal citations omitted). Therefore, the Court orders that Defendants reimburse Plaintiff's reasonable costs and attorneys' fees in preparation of her Motion.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Sanctions Pursuant to Rule 37(e) is GRANTED IN PART.

**SO ORDERED.**

                                                         /s/
                                         Steven L. Tiscione
                                         United States Magistrate Judge
                                         Eastern District of New York

Dated: Central Islip, New York
         September 10, 2025