UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TIFFANY ADLER,

                                Plaintiff,

        -against-

SONOTEC US INC., SONOTEC GMBH,
AND CHRISTOPHER PORTELLI,

                                Defendant(s).

**MEMORANDUM & ORDER**
23-CV-1634 (GRB) (ST)

**TISCIONE, United States Magistrate Judge:**

Tiffany Adler brought this Title VII suit against her former employer. Discovery disputes have plagued this docket. Namely, there has been tension regarding the adequacy of disclosures made by Defendant Sonotec GmbH and whether such were made through an authorized custodian.

Now pending are three motions: (1) a motion to alter this Court's prior order issuing an adverse jury instruction for spoliation; (2) a motion for fees related to that order; and (3) a new motion for discovery sanctions against GmbH. This order addresses all three.

## BACKGROUND

### I.        Parties

Tiffany Adler ("Plaintiff") was formerly employed by Sonotec US Inc.

Sonotec GmbH ("GmbH") is a German technology company. Sonotec US Inc. ("Sonotec") is its American subsidiary. Christopher Portelli ("Portelli") was Plaintiff's immediate supervisor and Managing Director of Sonotec (Collectively "Defendants").

### II.        Factual Allegations and Procedural History

This Court presumes familiarity with this matter. What follows are facts and procedural history pertinent to the pending motions.

Portelli hired Plaintiff in 2022 as an administrative assistant, and she was soon promoted to project manager. Complaint, ("Compl."), ECF No. 1. ¶¶ 1, 2, 63, 64. Plaintiff alleges Portelli

-1-

engaged in a pattern of sexual harassment beginning at the start of her employment. *Id*. A full accounting of the alleged harassment is detailed in the complaint. This Court provides a summary.

Portelli purportedly made inappropriate comments and sexual advances toward Plaintiff. *Id*. ¶¶ 85–90. Portelli was explicit about his romantic desire for Plaintiff, telling her he was in love, wanted to marry her, and have children with her. *Id*. ¶ 91. Portelli frequently gave Plaintiff lavish gifts which she felt obligated to accept out of fear of losing her job. *Id*. ¶¶ 60, 96–100.

Portelli frequently took Plaintiff to vacations and dinners, where he allegedly made unwanted sexual advances. *Id*. ¶¶ 66–72, 102–08, 120–60. While this Court need not rehash the details of the allegations, it is necessary to note they are quite disdainful.

The harassment culminated at Sonotec's holiday party on December 22, 2022, where Portelli allegedly touched her inappropriately in front of other employees. *Id*. ¶¶ 192–202, 233.

On December 27, 2022, Plaintiff and Portelli had a meeting to discuss the holiday party incident and their relationship. *Id*. ¶¶ 201–13. Unbeknownst to Portelli, Plaintiff recorded the conversion. *Id*. ¶ 210. This Court will not endeavor recounting the 90-minute conversation, but Plaintiff expressed her frustration and Portelli apologized for his behavior. *Id*.

On December 30, 2022, Portelli filed an employee-incident report with Sonotec's human resource officer, Cristy Baldwin. The incident report describes the holiday party incident, as well as the December 27, 2022, conversation. The report notes Plaintiff's boyfriend wanted her to take legal action.

On January 4, 2022, Cristy Baldwin investigated the matter and interviewed witnesses. The investigation revealed no other employees saw the holiday party incident. The matter was dismissed, and Plaintiff and Portelli were no longer to work together.

On January 5, 2023, Portelli terminated Plaintiff. *Id*. ¶ 224.

The following day, Portelli searched Plaintiff's work computer, discovering search terms he believed could result in litigation, including: "definition sexual harassment," "grounds for harassment lawsuit," "sexual harassment lawyers," and information on certain statutes of limitations. Portelli engaged legal counsel on January 8, 2022. Defense counsel immediately issued a litigation hold on all evidence relating to Plaintiff and Portelli.

On March 3, 2023, Plaintiff sued Sonotec, GmbH, and Portelli alleging *inter alia* sexual harassment and retaliation under Title VII. *See generally* Compl.

Discovery disputes have been the subject of much of this litigation. On September 10, 2025, this Court issued an order for Rule 37 sanctions against Defendants. *See* September 10, 2025 Order, ECF No. 102. There, this Court found Defendants' duty to preserve commenced January 6, 2023. Nevertheless, Defendants deleted text messages after the preservation date. Accordingly, this Court ordered an adverse inference regarding the deleted texts. We held the jury would be given an instruction that they may presume the deleted messages between Ms. Mustafic and Ms. Stallone are unfavorable to Defendants.

Now before this Court is Plaintiff's motion to expand the scope of the adverse inference [ECF No. 103]; attorney fees pursuant to the prior Rule 37 Order [ECF No. 112]; and a new motion for discovery sanction [ECF No. 109].

## DISCUSSION

### I.    Rule 60(b)(1)

Rule 60(b)(1) permits a party to seek relief from judgment based on "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1); *See Kemp v. United States*, 596 U.S. 528 (2022). This includes a "district court's mistake in law" *Leonard v. Lowe's Home Ctrs.*, 83 F.

-3-

App'x. 402, 403 (2d Cir. 2003), or a "mistakes of fact." *In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003). Before this Court is, purportedly, the latter.

Plaintiff urges this Court to alter a portion of its September 10, 2025 Order. *See* Rule 60 Motion, ECF No. 103. Specifically, Plaintiff requests this Court expand the adverse inference to include text messages between Portelli and Ms. Mustafic sent between December 7, 2022, and January 6, 2023. Plaintiff argues this is necessary because Sonotec employees used iMazing – a software that deleted messages every thirty days. Thus, although the duty to preserve commenced January 6, 2023, "Ms. Mustafic would have had copies on her phone of her text messages with Christopher Portelli dating back thirty days, i.e. to December 7, 2022." *Id*.

Notably, the manner and scope in which iMazing was utilized was *never* described by either party. After this Court's independent analysis of the iMazing software, we found

> that Mr. Portelli most likely did not delete text messages the same day he backed-up and exported his texts. [*Hoffer v. Tellone*, 128 F.4th 433, 441 (2d Cir. 2025)] (noting that the moving party's burden is to prove each element by a preponderance of the evidence). Rather, without more information, it merely appears that Mr. Portelli's affirmative act of backing up and exporting texts was a reasonable effort to preserve evidence. *See Skyline Steel, LLC v. PilePro*, LLC, 101 F. Supp. 3d 395, 408 (S.D.N.Y. 2015) (holding litigants must take affirmative steps to preserve evidence and reduce inadvertent spoliation).

September 10, 2025 Order at 14.

We limited the scope of the adverse inference because "[n]either Plaintiff nor Defendants have offered the Court any argument regarding Mr. Portelli's use of iMazing, how he used it, what filter terms he may have used, whether he chose to back-up the entirety of his text message history, or whether he had previously backed-up his iPhone." *Id*. In other words, we will not further speculate the existence of texts dated before the duty to preserve commenced, especially in the absence of any proof regarding the use of iMazing.

True, Rule 60 provides courts the ability to alter an order based on an inadvertent "mistake of the court." *In re 310 Assocs.*, 346 F.3d at 35. However, this Court's neglect of phantom texts between Portelli and Ms. Mustafic between December 7, 2022, and January 6, 2023, was not inadvertent, but intentional. Plaintiff has simply failed to produce sufficient evidence proving that such texts ever existed, or, if they did, that they were deleted after the duty to preserve arose. The Rule 60 motion is therefore denied.

## II.    Attorney Fees

Next, this Court will award Plaintiff attorney fees for Defendants' prior discovery violations. In addition to the adverse inference, this Court ordered Defendants to reimburse Plaintiff's attorney fees. The Parties failed to amicably resolve the outstanding fees. Plaintiff requests $47,347.

Justification for Rule 37 attorney fees derives from the notion that parties should be compensated for unnecessary work expended as a result of an opposing party's discovery failures. *See Am. Empire Surplus Lines Ins. Co. v. JJSL Dev., Inc.*, 2017 WL 9485713, at *3 (E.D.N.Y. Feb. 13, 2017) (Holding Rule 37 sanctions appropriate where opposing party "forced to litigate the missing discovery in this action for an extended period with multiple filings."). As with any imposition of attorney fees, "sanctions under Rule 37 lies within the broad discretion of the district court." *Ganci v. U.S. Limousine Serv., Ltd.*, 2012 WL 13109965, at *3 (E.D.N.Y. Sept. 28, 2012) (citing *Corporation of Lloyd's v. Lloyd's U.S.,* 831 F.2d 33, 36 (2d Cir. 1987).

"[A]n award of fees as a sanction for discovery abuse begins with a lodestar analysis." *Rahman v. The Smith & Wollensky Rest. Grp., Inc.*, 2008 WL 1899938, at *2 (S.D.N.Y. Apr. 29, 2008). Calculating the lodestar figure requires multiplying the number of hours worked by the appropriate hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Indeed, "product of

a reasonable hourly rate and the reasonable number of hours required by the case[,] creates a 'presumptively reasonable fee.' " *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)).

    a. *Hourly Rate*

Plaintiff requests $565 per hour for attorneys Alex Granovsky and Rudolph Delson.

The Second Circuit has established a list of twelve non-exhaustive factors when determining a reasonable hourly rate:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 187.

Plaintiff's Counsel demonstrates considerable experience to justify the requested rate. Both Mr. Granovsky and Mr. Delson have been practicing law for over twenty years. *See* Delson Decl. ¶¶ 31– 32, ECF No. 109-2.

Mr. Delson graduated from New York University School of Law in 2002 and clerked in the Ninth Circuit Court of Appeals. *Id*. ¶¶ 32. Since then, Mr. Delson worked at several firms. *Id*. In 2017, he joined Granovsky & Sundaresh PLLC in an Of Counsel role, focusing on employment litigation. *Id*.

Mr. Granovsky graduated from New York University School of Law in 2002 and clerked in the District of New Jersey. *Id*. ¶ 32. Since then, he worked at several firms as a labor and

employment attorney. *Id*. In 2010, he co-founded Granovsky & Sundaresh PLLC, specializing in labor and employment law. *Id*. Notably, both Mr. Granovsky and Mr. Delson have clients who pay $565 per hour. *Id*. This Court is satisfied that Mr. Granovsky and Mr. Delson demonstrate significant experience that justifies the $565 hourly rate.

Moreover, these rates are consistent with rates generally approved in the Eastern District. *See Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025) ("I have rounded out the forum rates in the Eastern District to now be $450-$650 for partners."); *Taylor v. Cooper Power & Lighting*, 2025 WL 2524467, at *3 (E.D.N.Y. July 14, 2025); *Harbus v. Vosa TV Inc.*, 2025 WL 1153818, at *3 (E.D.N.Y. Apr. 21, 2025) (Holding $600 per hour appropriate for partner); (Holding $650 per hour appropriate for senior partner); *Santander Consumer USA, Inc. v. Port Auth. of New York & New Jersey*, 2023 WL 5758995, at *4 (E.D.N.Y. Sept. 6, 2023) (Holding $600 per hour appropriate for partner).

### b. Hours Expended

Next, the Court must determine whether the hours requested are reasonable. Such requests "should specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Child. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "[I]n the Second Circuit, motions for attorney's fees must be based on contemporaneous time records specifying relevant dates, time spent and work done." *Broad. Music, Inc. v. R Bar of Manhattan, Inc.*, 919 F. Supp. 656, 661 (S.D.N.Y. 1996).

Here, Plaintiff's Counsel spent 83.8 hours preparing her Rule 37 motion. In doing so, Plaintiff provides detailed contemporaneous time records. *See* Time Chart, ECF No. 112-2. Nevertheless, a reduction of the request is necessary.

Plaintiff attempts to justify the considerable hours expended, noting

> Plaintiff's motion included not only 40 pages of briefing (between her opening and reply briefs), but over three dozen exhibits totaling more than 700 pages. It was an unusually labor-intensive motion, requiring us first to collect the sprawling evidence of what several of Defendants' key employees had done (and not done) to preserve ESI, and then, second, to organize that evidence into a succinct and digestible narrative.

Rule 37 Motion at 1. A reduction is appropriate for three reasons: (1) Plaintiff's Rule 37 motion was granted *in part*; (2) 83.8 hours preparing this motion is excessive; and (3) some of the work performed by Plaintiff's Counsel was more aptly suited for a paralegal, assistant, or secretary.[1]

Relevant here, Rule 37 (a)(5)(C) controls, giving the court discretion to "apportion the reasonable expenses for the motion." *Id*. A reduction is necessary "given the mixed results of the motion[s]." *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 217 (S.D.N.Y. 2009).

"Indeed, the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citation and quotation marks omitted). As such, courts in the Second Circuit generally reduce fees where a movant is not wholly successful on a motion. *See, e.g., Hardaway v. Ridgewood Corp.*, 706 F. Supp. 2d 436, 441 (S.D.N.Y. 2010) (reducing fee award 25%); *McDow v. Rosado*, 657 F. Supp. 2d 463, 470 –71 (S.D.N.Y. 2009) (reducing fee award 12%); *Valvo v. City of New York*, 2018 WL 3999011, at *5 (E.D.N.Y. Jan. 23, 2018) (reducing fee award 55%); *Husain v. Springer*, 579 F. App'x 3, 5 (2d Cir. 2014) (reducing fee award by roughly 25%).

Importantly, "because fees are left to each court's discretion, the case law concerning reduced fees is not easily summarized." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 2021 WL 1222159, at *16 (S.D.N.Y. Mar. 31, 2021).

---

[1] Some examples of work more appropriate for a secretary are .2 hours to serve the Rule 37 motion and 1.4 hours to finalize and send the motion to printer. *See* Time Chart.

Here, due to the excessive hours expended and mixed results achieved, a 25% reduction is warranted.  Accordingly, Plaintiff is entitled to $35,510.25.

### III.    Motion for Sanctions

Plaintiff's immediate sanctions motion contends GmbH was largely absent from discovery for the first two years of this litigation. *See* Sanctions Motion, ECF No. 109.

As way of background, Plaintiff filed suit March 2, 2023, and on March 13, Attorney Scott Mishkin waived service on behalf of *all* Defendants including GmbH. *See* ECF Nos. 7–9. On May 5, 2023, Mr.  Mishkin filed an answer on behalf of *all* Defendants. *See* ECF No. 12. Mr.  Mishkin repeatedly responded to discovery requests for GmbH, and Portelli signed several requests for admission ("RFA") on its behalf. *See* Pf's Exs. L, N, & P, ECF No. 109-2. From all appearances, GmbH was active during the early stages of litigation and throughout discovery. That, however, was not the case.

In October 2024, Mr.  Mishkin withdrew as Defense Counsel and Violet Elizabeth Grayson assumed the role. *See*  ECF Nos. 72 & 74.

On January 22, 2025, this Court held a conference to discuss whether Portelli was authorized to respond to discovery requests on GmbH's behalf, and whether GmbH had diligently searched for documents. *See* ECF No. 79. This colloquy adequately summarizes the conference:

> THE COURT: I'll make this very simple. There was a discovery request made to [GmbH]. Did the company conduct a diligent search of its systems and produce any responsive documents?
>
> MS. GRAYSON: We did.
>
> THE COURT: Okay. I mean, that's on the record. If you depose this witness and find out that the company did not in fact do that, then you are more than welcome to come back and make a motion for sanctions. And quite frankly, if it turns out that they didn't do what they just told me they did on the record, then I'll grant it.

*See* Conference Transcript, ECF No. 86.  This Court issued an order directing Defense counsel to confirm whether Portelli was an authorized agent, and whether GmbH conducted sufficient discovery. *See*  ECF No. 79.

On May 22, 2025, Plaintiff conducted a Rule 30(b)(6) deposition of GmbH Director Michael Münch. *See* Pf's Ex. X, ECF No 109-2. That deposition was, in a word, revealing.

Plaintiff's Counsel asked Mr. Münch "[h]ad you done any searches for relevant documents related to this case prior to March 2025?" and Mr. Münch replied "no." *Id*. 74: 6–8. Plaintiff then asked whether anyone from GmbH had been in contact with its prior attorney – Mr.  Mishkin. Again, Mr. Münch replied "no." *Id*. 74: 13–18. Accordingly, there was seemingly no contact between GmbH, its attorney, and its discovery representative – Portelli.

Indeed, when asked about Portelli's role at GmbH, Mr. Münch stated he had none. *Id*. 18: 1–11. Mr. Münch stated Portelli was not an officer, director, employee, nor agent. *Id*. When asked whether Portelli was authorized to sign documents on GmbH's behalf, Mr. Münch replied "no." *Id*. 19:21–20:5.[2]

Further revealing is the Declaration of Manuela Münch – Managing Director of GmbH and sister of Mr. Münch. *See* Manuela Münch Decl., ECF No. 109-5.  Ms. Münch stated GmbH was aware of this litigation since January 2023 but was not aware that GmbH had a duty to conduct diligent discovery until two-years later in January 2025. *Id*. ¶¶ 1–3. GmbH's current counsel – Ms. Grayson – set a meeting for February 14, 2025. *Id*. ¶ 4. It was not until GmbH and its German Counsel prepared for the February 14 meeting that GmbH reviewed its discovery responses and determined they were accurate. *Id*. ¶ 5.  It was not until the February 14 meeting that GmbH "committed to make" the required document search. *Id*. ¶ 7.

---

[2] GmbH then retroactively authorized Portelli to answer discovery response, and while such is permissible, it does not absolve GmbH for its prior discovery failures.

Plaintiff now requests: (1) an order binding GmbH to discovery responses submitted on its behalf; and (2) attorney fees. The first request is granted, as "GmbH stipulates to being bound by all prior discovery responses served on its behalf." Dfs' Oppo. at 1, ECF No. 109-3. Plaintiff's request for fees is granted in part.

As outlined above, this Court has extensive authority to issue sanctions for discovery violations. *See supra* pg. 7–8. Here, this Court finds GmbH violated several provisions of Rule 37, including: 37(b) for missing discovery deadlines; 37(c) for failing to make required disclosures; and 37(d) for failing to timely certify the RFAs. Fed. R. Civ. P. 37 (c–d).

Defendants make three arguments to evade sanctions, each of which fail.

First, GmbH attempts to skirt blame for discovery violations on their first attorney, Mr. Mishkin. Plaintiff argues any misconduct "was Mr. Mishkin's fault and no fault of anyone at GmbH." Defs'. Oppo. at 4. However, "[t]he acts and omissions of counsel are normally wholly attributable to the client." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 n.10 (2d Cir. 1979); *see also Ocello v. City of New York*, 2008 WL 2827424, at *6 (E.D.N.Y. July 21, 2008) ("sanctions may be imposed against a party for her counsel's misconduct."). Moreover, GmbH is a sophisticated corporate entity that retained an American attorney in March 2023. *See* ECF No. 11. GmbH's Co-Directors, however, did not bother examining the pleadings and ensuring the accuracy of discovery responses until February 2025. While this Court does not doubt Mr. Mishkin's communication with GmbH was sparse, it is disingenuous to suggest blame is his alone. In any event, Mr. Mishkin's alleged misconduct is wholly imputed to GmbH. *See supra*.

Second, GmbH argues Plaintiff was not "irreparably prejudiced" by its discovery delay. While GmbH admits it did not search for document until April–May 2025, *see* Grayson Decl. ¶¶

4–5, ECF No. 109-4, it urges this Court to ignore the misconduct because many documents produced were "irrelevant." Defs. Oppo. at 5. However, the Second Circuit "along with the Supreme Court, have consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions[.]" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 148 (2d Cir. 2010). To be sure, "Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants." *Id.* at 149; *see also Sentry Ins. a Mut. Co. v. Weber*, 720 F. App'x 639, 640 (2d Cir. 2017) (plaintiff is "not required to show prejudice resulting from the defendants misconduct."); *Icon Int'l, Inc. v. Elevation Health LLC*, 347 F.R.D. 274, 294 (S.D.N.Y. 2024) (rejecting the no harm no, foul argument, noting "a court *may* also consider what prejudice the movant has suffered") (emphasis added).

Third, Defendants make the unsupported assertion that an "[i]mposition of sanctions against GmbH would only be appropriate if GmbH engaged in willful misconduct." Dfs. Oppo. at 2. Plaintiff improperly cites *Olaf Soot Design, LLC v. Daktronics, Inc.*, 325 F. Supp. 3d 456 (S.D.N.Y. 2018). There, the court held severe sanctions, like an adverse inference or dismissal, "[are] appropriate only where the offending party's conduct is 'willful or culpable.'" *Id.* at 465 (citing *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 52 (S.D.N.Y. 2010), *Luft v. Crown Publishers, Inc.*, 906 F.2d 862, 866 (2d Cir. 1990)). True, "a court should always impose the least harsh sanction that can provide an adequate remedy." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010). Here, however, Plaintiff requests GmbH be bound by prior discovery responses (to which GmbH consents), and attorney fees which are "[t]he mildest sanction under Rule 37(b)[.]" *Best Payphones, Inc. v. Dobrin*, 409 F. Supp. 3d 130, 135 (E.D.N.Y. 2018) (citation omitted). While courts consider "the willfulness of the non-compliant party" *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 208 (S.D.N.Y. 2002), "[n]o

particular factor is dispositive, and sanctions must be weighed in light of the full record in the case." *Perez v. Siragusa*, 2008 WL 2704402, at *4 (E.D.N.Y. July 3, 2008) (citation and quotation marks omitted). Here, attorney fees are an appropriate sanction for GmbH's near two years of discovery stagnation, blatant misrepresentations to this Court, and failure to timely ensure the accuracy of discovery responses. The only question left is how much to award Plaintiff.

### a.  Award

Plaintiff requests $40,280.80: the sum of 71.2 hours at $565 an hour, plus $52.80 in costs. The lodestar analysis was previously discussed – i.e., the appropriate hourly rate multiplied by the number of hours worked. *See supra*. The requested $565 hourly rate is appropriate for the reasons addressed above.

Moreover, Plaintiff provides contemporaneous time records to support hours dedicated to the initial motion. See Pf's. Ex. BB, ECF No. 109-2. However, Plaintiff fails to provide records to support the 11.4 hours spent on reply briefing. As stated, fee requests *must* be supported by contemporaneous time records. *Broad. Music, Inc.*, 919 F. Supp. at 661.

Plaintiff self-regulates the fee request by reducing the hours in two categories. Plaintiff requests 33% for the hours billed in rows 2–27 because much of the work would have been done regardless of GmbH's inactivity. *See* Pf's. Ex. BB. Likewise, Plaintiff requests 25% for hours billed from rows 51–57 because this Court granted less relief than Plaintiff sought. *Id*.[3] Unsurprisingly, there is disagreement as to the hours requested. We find Plaintiff's self-imposed reductions sufficient to remedy Plaintiff and deter GmbH from further discovery violations.

---

[3] Defendants argue "Plaintiff impliedly concedes that GmbH was at least 75% the prevailing party on the July 10, 2025 motion, given that she is only seeking 25% of her fees . . . Therefore, GmbH should receive 75% of its own attorney's fees incurred in defending the motion heard on July 10, 2025." Dfs' Oppo at 11. This Court will not attempt to engage with such an absurd and baseless assertion.

Plaintiff is entitled to $33,856.75 – the amount initially requested. Plaintiff is not entitled to the 11.4 hours spent on reply briefing for failure to provide contemporaneous records.

## **CONCLUSION**

For the foregoing reasons:

- Plaintiff's motion to alter judgment [ECF 103] is DENIED.

- Plaintiff's request for attorney fees pursuant [ECF 112] is GRANTED in part. Plaintiff is entitled to $35,510.25, jointly and severally between Portelli and Sonotec U.S.

- Plaintiff's motion for sanctions [ECF 109] is GRANTED in part. Plaintiff is entitled to $33,856.75 in sanctions to be paid by GmbH.

**SO ORDERED.**

/s/
_____

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
April 28, 2026