FILED
CLERK

4/29/2026 2:27 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
TIFFANY ADLER,

                     Plaintiff,

          - against -

SONOTEC US INC., *et al.*,

                    Defendants.
-------------------------------------------------------------------X

**MEMORANDUM
AND ORDER**

Civil Action
No. 23-1634 (GRB)(ST)

**GARY R. BROWN, United States District Judge**:

Plaintiff Tiffany Adler brings this employment discrimination action, alleging a hostile work environment on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000-e, *et seq*, and related state law claims. Plaintiff alleges that individual defendant Christopher Portelli, her work supervisor during the relevant interval of time, subjected her to a protracted campaign of sexual harassment and assault. She asserts the aforementioned federal claim for hostile work environment under Title VII, against both Sonotec US ("SUS"), her immediate employer, and Sonotec GmbH ("GmbH"), SUS's parent company. She also alleges several related claims arising under New York state law.[1]

---

[1] Mr. Portelli previously asserted a counterclaim against plaintiff, alleging intentional infliction of emotional distress. *See* Docket Entry ("DE") 12. That claim was dismissed with prejudice by the Court. DE 24. Additionally, on September 10, 2025, the Honorable Steven Tiscione sanctioned defendants for destruction of text messages by Mr. Portelli's executive assistant, Alyssa Mustafic, and imposed as a remedy an adverse inference jury instruction that "the jury may presume, but is not required to do so, that the deleted text messages . . . are unfavorable to [d]efendants." DE 102. Briefing on any appeal from that order has been stayed. Order of September 15, 2025, in Response

Before the Court are defendants' requests for leave to file motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56.  DE 119, 123.  GmbH argues that it is not a proper defendant because it is not part of a "single integrated enterprise" with SUS and therefore is not responsible for any alleged Title VII violations.[2]  SUS and Mr. Portelli, in turn, contend that SUS does not employ fifteen or more people and is also not covered by Title VII.  As a result, defendants maintain that if the Court agrees with GmbH that there is no "single integrated enterprise," then no federal question remains.  Failing federal question jurisdiction, defendants assert, there is no independent basis for federal jurisdiction, and the state law claims should be dismissed.

On April 5, 2026, the Court held a pre-motion conference regarding defendants' requests for leave to file motions for summary judgment.  The parties addressed the motions, and the Court reserved decision.

For the reasons set forth herein, the Court deems the motion made as to both requests, and both motions are DENIED in their entirety.

---

to DE 103.  Most recently, Judge Tiscione imposed sanctions against GmbH, based on GmbH's failure to participate in the discovery process.  DE 139.  The sanctions imposed on GmbH were "an order binding GmbH to discovery requests submitted on its behalf" and partial attorney's fees.  *Id.*  The Court did not consider the discovery issues nor incorporate any adverse inference into the analysis in this opinion.

[2] Plaintiff asserted at oral argument that GmbH could still be subject to supplemental jurisdiction on certain state law claims if the Title VII were dismissed as to GmbH only. That situation did not arise here, and the Court therefore need not reach plaintiff's contention.

*Factual Background*

The relevant background facts, drawn from the parties' Rule 56.1 statements where possible, are as follows: Defendant Sonotec GmbH is a German corporation in the ultrasonic measurement field.  DEs 128, 136 (Parties' Rule 56.1 Statements of Alleged Undisputed Facts as to GmbH "GmbH") ¶ 1.[3]  Defendant Sonotec US is a Delaware Corporation.  DEs 129, 134 (Parties' Rule 56.1 Statements of Alleged Undisputed Facts as to SUS and Mr. Portelli "SUS") ¶ 2.  Defendant Christopher Portelli is CEO of SUS and was plaintiff's supervisor at all relevant times.  *See* GmbH ¶ 17; SUS ¶ 34.

Plaintiff alleges that during her employment with Sonotec, Mr. Portelli subjected her to consistent sexual harassment and abuse.  *See* Plaintiff's Complaint (Compl.) DE 1 ¶¶ 85-183.[4]  According to the Complaint, Mr. Portelli's conduct later became public, after which Mr. Portelli allegedly attempted to convince plaintiff to drop the matter.  Compl.  ¶¶ 192-206.  On January 5, 2023, roughly a week after the conduct became public, plaintiff's employment was terminated by Sonotec.  SUS ¶ 94; DE 128, Ex. C.

---

[3] DEs 129 and 134 together contain both plaintiff and defendants' respective statements of purportedly undisputed facts as to SUS and Mr. Portelli's intended motion and the counterparty responses thereto.  DEs 128 and 136 do the same as for GmbH's intended motion.  For ease of citation, the Court consolidates DEs 129 and 134 as a single reference and likewise consolidates DEs 128 and 136.

[4] The complaint is unverified and therefore cannot be considered as evidence at summary judgment, but the Court includes facts from the complaint to provide relevant context.  *See Zambrano v. Envios Espinoza*, 22-CV-03031 (OEM) (SIL), 2025 WL 1808694, at *1 (E.D.N.Y. July 1, 2025) (citing, *inter alia*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

The parties offer competing narratives as to the employment relationship between SUS employees and the Sonotec entities.  Plaintiff was initially hired by Mr. Portelli as an administrative assistant.  Compl. ¶ 50.  She was later promoted to the title of "project manager."  GmbH ¶ 98.  As part of that process, plaintiff met with GmbH executives, though the parties dispute whether that meeting was an "interview" or only a "meet and greet" afterwards.  *Id.*  More broadly, representatives from GmbH joined salespersons from SUS on sales calls from time to time, but the parties dispute whether GmbH did so to "supervise" the SUS employees or only to offer "assistance."  GmbH ¶¶ 59-60.  Similarly, SUS employees received "training courses" from GmbH, but the parties dispute whether that constitutes "an ongoing process of training and coaching American staff with respect to products [and sales]."  GmbH ¶ 57-58.  The parties disagree as to whether GmbH can direct SUS salespersons to "follow up on the sales inquiries received by GmbH."  GmbH ¶ 72.  GmbH and SUS also held bi-weekly "fluidics meetings," which included coordination over marketing, but the parties dispute whether pricing as to end-consumers was discussed at those meetings.  GmbH ¶¶ 81-85, 91.  And, germane to the instant allegations, SUS employees had the ability to report a supervisor's misconduct directly to the GmbH board, though GmbH asserts that no employee has ever done so.  GmbH ¶ 107.

The parties' narratives also diverge as to the relationship between the Sonotec entities themselves.  The parties agree that GmbH owns 75% of SUS, that Mr. Portelli owns the remaining 25%, that the SUS board includes Manuela Münch, Michael Münch,

and Hans-Joachim Münch, in addition to Mr. Portelli, and that Michael and Manuela Münch sit on GmbH's board.  GmbH ¶¶ 10, 132; SUS ¶ 5.  Both sides also agree that GmbH and SUS share a logo, at times issue identical communications, share identical website pages, and that SUS distributes products manufactured by GmbH.  GmbH ¶¶ 47-49, 54.  The parties dispute, however, whether SUS was required to obtain approval from GmbH to issue raises to US-based employees, with plaintiff citing an email from GmbH that includes a "raise suggestion."  GmbH ¶ 102.  Plaintiff also quotes Mr. Portelli as reporting that he could not promote her or give her a raise above a certain number without permission from Germany, which GmbH disputes.  GmbH ¶¶ 98, 101.  Finally, the parties dispute whether GmbH sets the markup price at which SUS distributes its products.  GmbH ¶ 68.

Factual issues also arise as to adverse employment actions at SUS—Mr. Portelli informed GmbH of plaintiff's firing within fifteen minutes of her termination, stating in the email "please after [discussing the matter 'over the phone first thing in the morning'] you can inform your employees."  SUS ¶ 94; DE 128, Ex. C.  And in his deposition, Michael Münch, a board member of both GmbH and SUS, expressed confusion regarding the capacity in which board members would act were they to discipline Mr. Portelli.  GmbH ¶ 137.

Finally, the parties offer divergent computations of the number of SUS employees.  SUS and Mr. Portelli proffered payroll records (entered after the close of discovery) that catalogue fewer than fifteen employees at SUS.  DE 124 (Declaration of

Christopher Portelli), Ex. A.  Mr. Portelli, however, stated in a recorded conversation with plaintiff that he had "gambled 17 people's employments on you" and in a text message with his executive assistant Alyssa Mustafic, similarly stressed "I am risking 17 people's livelihood."  SUS ¶ 35; DE 128, Ex. CC 23:5-7, Ex. AA 103797.  At her deposition, Ms. Mustafic did not contest that SUS had 17 employees, though in his deposition, Mr. Portelli stated that the figure of seventeen "sounds like my employees plus my wife and kids."  DE 129, Ex. O 240:17-241:14, Ex. Q 122:10-12.  Mr. Portelli conceded in his deposition that he had employed plaintiff's mother as a "gig worker," paying her "out of [his] own pocket."  SUS ¶ 35; Ex. Q 209:23-212:18.  In her deposition, plaintiff claimed Mr. Portelli relayed to her that other employees are paid off the books, in addition to plaintiff's mother.  SUS ¶ 35.  In May 2023, SUS also issued a press release mentioning fifteen employees.  *Id.*

As relevant to the pendant motions, the core issues are whether GmbH is liable for Title VII claims against SUS and, if not, whether SUS had fifteen or more employees, for Title VII purposes.  As discussed, it is undisputed that Title VII would apply to GmbH if it is deemed a single integrated enterprise with SUS.

### *Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp.  3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

*Discussion*

*GmbH's Motion for Summary Judgment*

For a parent company to be liable for the actions of its subsidiary in a Title VII suit, the parent and subsidiary must be a "single employer," and in turn, a "single, integrated enterprise." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 155-56 (2d Cir. 2014). In evaluating whether that standard is satisfied, courts in this Circuit consider four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.*

In this case, factors three and four indisputably favor plaintiff. It is uncontested that GmbH owns 75% of SUS (with the remaining 25% owned by Mr. Portelli), that the SUS board includes Manuela Münch, Michael Münch, and Hans-Joachim Münch, in addition to Mr. Portelli, and that Michael and Manuela Münch sit on GmbH's board. GmbH ¶¶ 10, 132; SUS ¶ 5. Factor one is satisfied with similar ease because it is undisputed that the two companies share a logo, at times issue identical communications, mirror some website pages, and that SUS distributes products manufactured by GmbH. GmbH ¶¶ 47-49, 54.

Nevertheless, it is the second factor (centralized labor relations) that is the "most significant." *Turley*, 774 F.3d at 156. To defeat a motion for summary judgment on interrelation of operation, a plaintiff "must cite more detailed evidence [than at the motion to dismiss stage,] from which a reasonable factfinder could understand the corporate relationship between the two defendants—evidence regarding such things as

mutual ownership, overlapping reporting lines, or shared management." *Cortese v. Skanska Koch, Inc.*, 544 F. Supp. 3d 456, 473 (S.D.N.Y. 2021).

That showing, however, does not require demonstration of "day-to-day control over labor relations." *Turley*, 774 F.3d at 156. Instead, a plaintiff must show only that the corporate parent's involvement is "sufficient and necessary to the total employment process, even absent total control or ultimate authority over hiring decisions." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995).[5]

GmbH's primary citation among cases with its preferred disposition is *Musiello v. CBS Corp.*, a motion to dismiss case. But *Musiello*, as in *Cook* and *Turley*, clarified again that the necessary showing requires merely "facts supporting a reasonable inference that there is an amount of participation by the parent that is sufficient and necessary to the total employment process." 518 F. Supp. 3d 782, 790 (S.D.N.Y. 2021). While that standard was not satisfied in *Musiello* because plaintiff's complaint was "devoid of facts supporting the existence of the second factor — control of employment decisions, including as to the plaintiff," *Id.* at 793, the factual record here is far more substantial. The remaining cases cited by GmbH are similarly distinguishable on the sufficiency of plaintiff's proffered evidence.[6]

---

[5] Importantly, a finding of interrelation as to Title VII does not mandate such a finding in all respects. *Turley*, 774 F.3d at 157 ("[w]e do not mean to imply that [the subsidiary] and its parent company would have constituted a single entity for all purposes.").

[6] In both *Dewey v. PTT Telecom Netherlands, U.S., Inc.*, 101 F.3d 1392 (2d Cir. 1996) and *Duffy v. Drake Beam Morin*, 96-CV-5606 (MBM), 1998 WL 252063, at *5 (S.D.N.Y. May 19,

At oral argument, the defendants placed substantial weight on *Da Silva v. Kinsho Int'l Corp.*, arguing that it stands for the proposition that a plaintiff must demonstrate the "parent's actual involvement in the particular circumstances giving rise to the litigation." 210 F. Supp. 2d 241, 244 (S.D.N.Y.), *aff'd*, 229 F.3d 358 (2d Cir. 2000). Putting aside both that *Da Silva* is non-binding authority and that *Da Silva* involved a claim for unlawful termination (a discrete decision) rather than a hostile work environment (a pattern of treatment), its posture remains markedly different. In *Da Silva*, the court found the parent and subsidiary enterprises not to be integrated only after a pretrial factual hearing, held with both parties' consent. Indeed, Judge Berman explained that such an analysis "turns largely on the weight of the evidence, including the credibility of witnesses," suggesting that resolution at summary judgment would be inappropriate, absent consent. *Id.* at 244.

And here, plaintiff has identified several disputes of material fact that preclude summary judgment on the single integrated enterprise issue:

First, plaintiff and defendants dispute whether plaintiff was required to "interview" with GmbH to be formally promoted to be a Project Manager or whether the meeting (which indisputably occurred) was only a "meet and greet" afterwards. GmbH ¶ 98. Plaintiff's 56.1 statement cites to her deposition testimony detailing a conversation with Mr. Portelli. *Id.* GmbH does not cite a source for the "meet and

---

1998), cited by GmbH, the plaintiffs provided only speculative evidence or no evidence at all as to the parent's involvement.

greet" contention outside of a declaration by the GmbH managing director, merely stating that "the facts asserted [in GmbH's counterstatement to plaintiff's Rule 56.1 statement] are entirely accurate."  DE 137.  That circular citation is plainly insufficient under the Local Rules to create a dispute of fact, let alone resolve that dispute in GmbH's favor.  *See Lindow v. Metro. Realty Grp., LLC,* 19-CV-2021 (GRB)(RML), 2024 WL 3228443 (E.D.N.Y. June 28, 2024).

Second, Michael Münch, a board member of both GmbH and SUS, expressed confusion about in what capacity (whether as the SUS board or as GmbH executives) SUS board members would act if they were to discipline Mr. Portelli.  GmbH ¶137.

Third, SUS employees have the ability to report misconduct directly to the GmbH board, though GmbH asserts that no employee has ever done so.[7]  GmbH ¶ 107.

Fourth, the parties dispute whether SUS was required to obtain approval from GmbH before issuing raises to US-based employees, with plaintiff citing an email from GmbH with a "raise suggestion."  GmbH ¶ 102.

Fifth, the parties dispute whether GmbH controls what markup SUS can charge on products manufactured by GmbH.  GmbH ¶ 68.

---

[7] At oral argument, counsel for the plaintiff also highlighted that defendants (in DE 12) argued as an affirmative defense that plaintiff did not exhaust her internal remedies at Sonotec.  That affirmative defense would be perplexing if GmbH were an entity with no interest in plaintiff's employment relationship with SUS.

Sixth, representatives from GmbH sometimes accompanied salespersons from SUS on sales calls, at least soon after SUS's creation, and the parties dispute whether GmbH did so to "supervise" the SUS employees or merely accompanied them to offer "assistance." GmbH ¶¶ 59-60.

Seventh, the parties dispute whether GmbH can direct SUS salespersons to "follow up on the sales inquiries received by GmbH." GmbH ¶ 72.

Eighth, SUS employees receive "training courses" from GmbH, and the parties dispute whether this amounts to "an ongoing process of training and coaching American staff with respect to products [and sales]." GmbH ¶¶ 57-58.

Ninth, the parties agree that GmbH and SUS held bi-weekly "fluidics meetings" and that the meetings included coordination over marketing, but the parties dispute the relevance of that fact. GmbH ¶¶ 81-85. The parties also dispute whether pricing as to end-consumers was discussed at those meetings. GmbH ¶ 91.

Tenth, plaintiff quotes Mr. Portelli as saying he could not promote her or give her a raise above a certain number without permission from Germany. GmbH disputes those claims. GmbH ¶¶ 98, 101.

And, eleventh, Mr. Portelli informed GmbH of plaintiff's firing within fifteen minutes of her termination, including in the email "please after [discussing the matter "over the phone first thing in the morning,"] you can inform your employees." SUS ¶ 94; DE 128, Ex. C.

12

The Court finds that the items above are sufficient evidence at the summary judgment stage to create a dispute of material fact as to whether GmbH's consent was sufficient and necessary to SUS's employment processes and plaintiff's employment. As a result, a grant of summary judgment for GmbH on the single integrated enterprise issue would be inappropriate. The Court deems GmbH's motion made and denies it in its entirety.

*SUS's Motion for Summary Judgment*

The Court's denial of GmbH's motion for summary judgment moots SUS's motion because all parties concede that GmbH has more than fifteen employees and therefore is subject to Title VII. Nonetheless, even if the Court had found that SUS was a distinct enterprise, the Court would still deny SUS and Mr. Portelli's motion for summary judgment.

Title VII only applies to employers with fifteen or more employees. *See Luna v. N. Babylon Teacher's Org.*, 11 F. Supp. 3d 396, 401 (E.D.N.Y. 2014) (citing 42 U.S.C. § 2000-e(b)).

SUS and Mr. Portelli cite payroll records in support of their contention that SUS employed fewer than fifteen people, citing *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 206-7 (1997) for the proposition that payroll records are the appropriate means for calculating the quantum of a corporation's employees.[8] That citation is accurate but

---

[8] Plaintiff argues that the payroll records were submitted after the close of discovery and that the Court should therefore refuse to consider them. In light of the disposition herein, the Court finds that issue to be moot.

incomplete: *Walters* held that it is appropriate to measure the number of employees *on payroll* as opposed to the number of employees *actually working* on a given day for computing the number of employees for Title VII purposes.  However, *Walters* does not stand for the proposition that such evidence is dispositive at the summary judgment stage where the responding party provides compelling evidence to the contrary.

Here, Mr. Portelli stated in a recorded conversation with plaintiff that he had "gambled 17 people's employments on you."[9]  SUS ¶ 35.  Mr. Portelli similarly wrote "I am risking 17 people's livelihood" in a text message to Ms. Mustafic.  *Id*.  Ms. Mustafic agreed at her deposition that the "17 people" referred to employees and did not challenge the calculation.  *Id*.  Mr. Portelli's later assertion that his figure of seventeen "sounds like my employees plus my wife and kids" is farcical.

Furthermore, Mr. Portelli stated in his deposition that he had employed plaintiff's mother as a "gig worker," paying her "out of [his] own pocket."  SUS ¶ 35; DE 129, Ex. Q 209:23-212:18.  And in her deposition, plaintiff attested that Mr. Portelli had told her that other SUS employees were paid off the books.  SUS ¶ 35.  Finally, SUS

---

[9] At oral argument, counsel for defendants purported to correct the Court on this point, stating "It was 17 people's lives, not 17 employees [on the recording]."  Transcript of Oral Argument of April 15, 2026 at 22:2-3.  Troublingly, that correction (apparently offered to counsel by Mr. Portelli) was inaccurate.  DE 128, Ex. CC 23:5-7 (Transcript of Recorded Conversation between Plaintiff and Mr. Portelli, reflecting "17 employees.").  Defendants did not challenge the authenticity of the transcript in either DE 123 or at oral argument.  Counsel and Mr. Portelli may therefore have confused the two instances in which Mr. Portelli referred to "seventeen" affected persons.  In any event, even if Mr. Portelli had referred to "lives," that statement would still have created a dispute of material fact.

14

issued a press release in May 2023 (after plaintiff's termination) mentioning fifteen employees. *Id.*

While there is no question that the payroll records annexed by defendants are relevant evidence, the Court determines that it would be inappropriate to find that the number of SUS employees is an undisputed fact. As a result, even if SUS and Mr. Portelli's motion were not moot, the Court would deem that motion made and deny the motion in full.

Finally, because defendants' challenge to plaintiff's state law claims discusses the appropriateness of supplemental jurisdiction only if the Title VII claim were dismissed, the motions' discussion of supplemental jurisdiction is moot.

*Conclusion*

Accordingly, the Court deems both motions made. GmbH's motion for summary judgment is DENIED in full. SUS and Mr. Portelli's motion is DENIED as moot. The parties are directed to submit a proposed pretrial order, in accordance with the undersigned's individual rules, no later than May 30, 2026. Trial will be scheduled shortly thereafter.

**SO ORDERED.**

Dated: Central Islip, New York
        April 29, 2026

*/s/ Gary R. Brown*
GARY R. BROWN
United States District Judge